**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **J.R.-1**

**No. 21-0338** (Morgan County 20-JA-21)

**MEMORANDUM DECISION**

Petitioner Grandfather J.R.-2, by counsel Michael Donadieu, appeals the Circuit Court of Morgan County's April 1, 2021, order terminating his custodial and guardianship rights to J.R.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Lee A. Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Debbie Flowers Payne, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his custodial and guardianship rights (1) when he successfully completed his improvement period, (2) without considering the strong bond between petitioner and the child, and (3) without considering a less-restrictive alternative disposition.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Prior to the filing of the instant petition against petitioner, who is the child's grandfather, a child abuse and neglect petition was filed against the child's parents, petitioner, and petitioner's wife, C.R., in 2019 as all four adults apparently lived in the same household with the child. Although the record is unclear, it appears that the petition was filed based on alcohol abuse and domestic violence in the home. Specifically, C.R. became intoxicated and perpetrated domestic

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Because the child and petitioner share the same initials, we will refer to them as J.R.-1 and J.R.-2 respectively, throughout the memorandum decision.

violence against the child, breaking his collar bone.[2] Thereafter, petitioner and C.R. were adjudicated as abusing custodians, and the parents were adjudicated as abusing parents. The circuit court granted improvement periods to all four. Petitioner and C.R. successfully completed their improvement periods, but the parents did not, and their parental rights were terminated. The parents were also denied post-termination visitation with the child. As such, petitioner and C.R. gained custody of the child, and the parents moved out of the home.

In May of 2020, the DHHR filed the instant petition against petitioner and C.R. alleging extensive domestic violence in the home. The DHHR alleged that law enforcement officers responded to the home multiple times due to C.R.'s intoxication and the domestic violence between petitioner and C.R. On one such occasion, petitioner broke into a locked room to get to C.R. Petitioner then took paracord and duct tape and threatened to tie up C.R., wrestled her to the ground, and punched her in the face, injuring her. Petitioner and C.R. both called 9-1-1 to report domestic violence by the other. Petitioner reported that C.R. was the subject of a "court order" that prohibited her from drinking alcohol, but she continued to do so. Petitioner stated that C.R. "usually gets totally out of control" when she drinks alcohol and that, while intoxicated, she sometimes attacks the child. Petitioner stated that C.R. struck the child, threatened to kill the child, and threw a metal pole at the child's head. C.R. also threw the child on the floor and was generally violent with him.[3] At one point, petitioner and the child left the home; however, petitioner and the child returned to the home despite C.R.'s continued alcohol abuse. Based on the foregoing, the DHHR alleged that petitioner and C.R. caused the child physical, mental, and emotional injury. Petitioner waived his preliminary hearing.

In July of 2020, the circuit court held an adjudicatory hearing wherein C.R. voluntarily relinquished her rights to the child. The DHHR presented the testimony of several witnesses regarding petitioner's adjudication. The circuit court ultimately found that petitioner and C.R. frequently engaged in domestic violence and exposed the child to the same. The circuit court further found that petitioner did not remove the child from the home despite the frequent violence. Accordingly, the circuit court adjudicated petitioner as an abusing parent. Thereafter, in August of 2020, the circuit court granted petitioner an improvement period.

Over the course of the following months, a Court Appointed Special Advocate ("CASA") prepared reports for the circuit court indicating that petitioner and the child shared a strong bond. However, the CASA opined that petitioner needed additional parenting instruction and needed to better maintain his home, as a leak in the ceiling caused black mold to grow in the child's room and used food containers were scattered throughout the home. Nevertheless, the circuit court granted increased visitation between petitioner and the child, including unsupervised visits on alternate Saturdays from 9:00 a.m. to 5:00 p.m.

---

[2]Testimony during the proceedings established that the child had osteogenesis imperfecta, also known as "brittle bone disease."

[3]Although not set forth in the petition, the record reveals that, following the dismissal of the prior case, C.R. committed domestic violence against the child such that he suffered a fractured rib.

The circuit court held a review hearing in February of 2021. The DHHR advised the circuit court that, during an unsupervised visit with the child, petitioner permitted the child's biological mother, whose parental rights had previously been terminated, to visit the child. The circuit court further noted that, at the time, the mother had an active bench warrant for her arrest. Petitioner was placed under oath and testified that he believed he had been granted the discretion to allow the mother to see the child. He explained that "[f]or the last 18 months I've told [the biological mother] that she cannot see [the child]." However, petitioner stated that he told the mother that if she ever achieved sobriety, he would entertain allowing her to see the child. Petitioner testified that "it was only four hours, nothing could hurt, she was clean, she was sober, she was acting ok." Nevertheless, petitioner admitted that he made a mistake and that he should not have permitted the mother to see the child. The circuit court suspended unsupervised visits with the child and ordered that any visits between petitioner and the child be supervised.

In March of 2021, the circuit court held a dispositional hearing. A CPS worker testified that the DHHR recommended the termination of petitioner's guardianship rights to the child as he failed to demonstrate that he had the capacity to protect the child from inappropriate persons. The CPS worker noted that the child had been in foster care for at least fifteen out of the last twenty-two months and expressed concern that, despite the provision of services, petitioner gave the biological mother access to the child. The CPS worker testified that the petition was filed, in part, based on petitioner's failure to protect the child from C.R., indicating that petitioner had not corrected his behavior to date given that he allowed the biological mother around the child. The CPS worker further testified that petitioner recently informed the circuit court that he no longer desired parenting classes and that "he has since gotten all that he can from parenting [classes] with [the provider]."

A service provider testified that she had "some concerns about [petitioner's] willingness to make any shifts in the way that he should parent." The provider expressed her concern that petitioner would revert to his prior behavior if the child were returned to his custody and the matter dismissed. The service provider also testified that she terminated adult life skills classes after petitioner informed her that he was no longer benefitting from that service.

The CASA testified that she had concerns about the physical structure of the child's bedroom within petitioner's home. The CASA noted that there was a hole in the ceiling and that moisture had developed in the room, causing a couch to develop mold. The CASA acknowledged that petitioner recently fixed the ceiling and removed the couch from the home. The CASA further testified that petitioner did not adequately supervise the child during visits and allowed him to play with dangerous items, such as a hatchet. The CASA also testified that she visited petitioner's home unannounced during an unsupervised visit and observed the biological mother in the home. The CASA stated that, when confronted, petitioner claimed that he had the discretion to permit the mother to see the child and that she had been sober for a week. Finally, the CASA admitted that there was an obvious bond between petitioner and the child.

Petitioner testified that he was under the impression that he had previously been granted the discretion to permit visits between the biological mother and the child. Petitioner admitted that he drove to Virginia to pick up the mother following her mental health appointment but claimed he did not initially have the intention of bringing her to his house. Petitioner reported that issues

3

with his GPS led to him bringing the mother to his home, and he testified that he thought it would be acceptable because she had been sober for a week. Petitioner stated that the fact that the mother had a bench warrant out for her arrest "was not in my mind at the time." When asked whether he wanted to say anything more to the circuit court, petitioner stated that he "learned the two little things that I needed to learn. It's not that major. That's what I can't understand. I've always treated [the child] well. I've never hurt him." Regarding the issues that led to the petition's filing, petitioner claimed that he could not prevent C.R. from getting drunk and that there was nothing he could have done.

At the conclusion of the hearing, the circuit court found that, after C.R. left the home, "the minute [petitioner is] able to make the next choice as to who should be around [the child] or not be around [the child,] he again makes the wrong choice" by bringing the mother into his home with the child despite knowing that she had been sober for only one week. The circuit court found that petitioner's actions demonstrated a total lack of insight into what actions place the child at risk despite the provision of services over the course of nearly two years between the two cases. The circuit court noted, "I mean, this case has been open for basically two years[,] and the very thing that starts the case is what ends the case." The circuit court found that, based on petitioner's lack of success in his improvement period and his inability to demonstrate that he could properly parent the child or provide for his safety, he was an inappropriate guardian for the child. As such, the circuit court terminated petitioner's custodial and guardianship rights to the child. Petitioner now appeals the April 1, 2021, dispositional order.[4]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating his custodial and guardianship rights when the evidence demonstrated that he was heavily engaged in the proceedings and was making progress in his improvement period but simply needed additional time. Testimony established that petitioner was participating in all services provided by the DHHR

---

[4]The parents' parental rights were previously terminated, and C.R. voluntarily relinquished any rights she had to the child. The permanency plan for the child is adoption by the foster family.

and that he was "in tune with many areas of [the child's] life." Petitioner further points out that he divorced C.R. during the proceedings and acknowledged his mistake in allowing the mother to visit the child. Petitioner avers that, although "the unfortunate appearance of the biological mother at a visit toward the end of the improvement period caused some concern," the CPS worker testified that petitioner had completed most of his improvement period and opined that an extension to petitioner's improvement period would not "harm anything." Further, petitioner's testimony and that of his service provider indicated that petitioner had improved his ability to parent the child and to set boundaries. Petitioner argues that, taken as a whole, the evidence shows that he has gained insight as to what issues he needs to improve upon and has already begun implementing appropriate changes. Petitioner also argues that the circuit court failed to consider the bond between petitioner and the child.[5] Testimony throughout the proceedings indicated that petitioner and the child were very close, and that petitioner was attentive to the child during visits. Petitioner contends that, given this bond and the CPS worker's testimony that an extension to his improvement period would not harm anything, the circuit court should have considered an alternative to the termination of his custodial and guardianship rights.

West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental, custodial, and guardianship rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on [his or her] own or with help."

The record establishes that petitioner demonstrated an inadequate capacity to solve the problems of abuse or neglect on his own or with help. As noted above, petitioner was provided an improvement period in both his prior case and in this case, with services such as parenting and adult life skills classes. However, petitioner demonstrated an inability to make good decisions regarding the safety of the child. Despite the fact that the child was injured by C.R. in the prior case, petitioner failed to protect the child from C.R. even though he knew that she continued to abuse alcohol, resulting in C.R. attacking the child, hitting him, threatening him, and breaking his rib. Nevertheless, the circuit court granted petitioner an improvement period during the underlying proceedings. While petitioner was largely successful in complying with services, the record reveals that petitioner ultimately failed to understand how he exposed the child to danger, as he permitted the biological mother to visit with the child despite the fact that her parental rights were previously terminated and she had been sober for only one week. Petitioner testified that he treated the child well and "never hurt him," stating that C.R.'s actions were out of his control. Based on this evidence, the circuit court found that petitioner demonstrated a total lack of insight into how his behaviors placed the child at risk and further found that petitioner essentially made no progress over the course of two years because "the very thing that start[ed] the case is what ends the case." Although petitioner argues that he shares a strong bond with the child and that he should have been granted either an extension of his improvement period or a less-restrictive alternative disposition

---

[5]Petitioner briefly references the grandparent preference, set forth in West Virginia Code § 49-4-114, in support of his claims. However, petitioner fails to establish how the grandparent preference applies in this situation given his adjudication as an abusing guardian.

to the termination of his custodial and guardianship rights, the fact of the matter is that he remained unable to protect the child from inappropriate persons.

We have previously held that "courts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." Syl. Pt. 1, in part, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980). Moreover,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). The evidence as set forth above demonstrates that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of his custodial and guardianship rights was necessary for the child's welfare. Consequently, we find no error in the circuit court's decision to terminate petitioner's rights to the child.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 1, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: January 12, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William R. Wooton